## SUPREME COURT

In the Matter of Joseph Donohue, Alfred T. Ellis and Henry Ellis.

*Constitutional law — habeas corpus — acrobats — cruelty to children — prevention of.*

An order by a competent tribunal committing a child found in an employ‑ ment contrary to the act of 1876, to prevent and punish wrongs to chil‑ dren (*Laws of* 1876, *chap.* 122, *p.* 95), is a final judgment in the matter, within the meaning of the *habeas corpus* act

The constitutionality of the statute under which the commitment was made cannot be impeached upon *habeas corpus* proceedings, as this would be inquiring into the *legality* of the judgment.

By section 3 of the act of 1876, which authorizes any court or magistrate to commit to an asylum, &c., any child engaged or used in violation of the act, the recorder of the city of Poughkeepsie had full power to commit these children to the care of the New York Society for the Pre‑ vention of Cruelty to Children.

The act of 1876 (*Laws of* 1876, *p.* 95, *chap.* 122), entitled "An act to pre‑ vent and punish wrongs to children," *held*, to be constitutional.

*N. Y. Chambers, September Term,* 1876.

Proceedings on *habeas corpus* by Alfred Smith to obtain the custody and care of the above named parties, who are infants under the age of sixteen years, and who, also, were committed on the 9th day of September, 1876, by the recorder of the city of Poughkeepsie, under chapter 124 of the Laws of 1876, to the care of the New York Society for the Prevention of Cruelty to Children.

*Messrs. Van Wyck and Glassey,* for the petitioner.

*Mr. L. L. Delafield,* for the society.

WESTBROOK, *J.*—The children whose custody this proceeding involves are confessedly of tender years, and were, when the order committing them to the care of the society was made, employed by the relator Smith as acrobats, and if they are again committed to his care they will doubtless be used for the same purpose, as he claims they are regularly indentured to him for that object.

Chapter 122 of the Laws of 1876, entitled "An act to prevent and punish wrongs to children," makes the use, employment or exhibition of children under sixteen years of age, by any person, for any such purpose as Smith has used and held them, a misdemeanor.   By section 3 of the act the recorder of the city of Poughkeepsie was fully authorized to make the order committing them to the care of the society aforesaid, and the principal questions which this proceeding presents concern the act and, by implication only, the action of the recorder, which action such act fully justifies.

The order of the recorder committing these children to the care of the society now detaining them was his final judgment upon that matter.   It was one which, under the act aforesaid, he was fully authorized to make, and which, as it seems to me, is not reviewable by *habeas corpus.*   The writ is not allowable (*vol.* 3, *R. S.* [*6th ed.*], *p.* 873, § 36) to a person "committed or detained by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction;" and if the writ issues, and it appears the party is so detained (*same volume, p.* 878, § 55), it is the duty of "the court or officer" before whom such proceeding is pending "forthwith to remand such party;" and lastly (*p.* 879, § 57), "no court or officer on the return of any *habeas corpus* * * * shall have power to inquire into the legality or justice of any * * * judgment * * * specified in the preceding twenty-second section."   I am aware that a plausible argument can be made upon the words "competent tribunal," used in the statute.   It is said that the order of the recorder was not one made by a "competent tribunal," because the

Matter of Donohue.

statute conferrng the power is unconstitutional, and hence it was not "competent" for him to make the one under which the children are now held. If the act be unconstitutional, it was undoubtedly not "competent" for the officer to act under it at all, and if in that sense the word is used in the *habeas corpus* act, the action of the recorder would be reviewable upon this proceeding. The same statute, however, has also declared that the court or officer before which the writ is returnable is "without" power to inquire into the legality or justice of any * * * judgment" rendered by "any competent tribunal of civil or criminal jurisdiction," and by necessity, therefore, it is forbidden, as that must involve the "legality" of the "judgment" to inquire into the constitutionality of the act under which the officer in making the order acts. In one sense the recorder was a "competent tribunal." To him the same power, the legislature, which passed the *habeas corpus* act, had confided the duty and right of doing what he undertook to do, and it is hardly supposable that there was any intention in the use of the words we are considering to clothe an officer or court which must summarily act with the grave prerogative of nullifying legislative action. It is safer and better, when a judgment has been rendered, which an express statute authorizes, to leave its review to the regular and more deliberate process of the higher courts, than to make of every court and officer authorized to issue this writ, a tribunal summarily to decide such grave and momentous questions (*People agt. Fancher*, 9 *Sup. Court R., N. Y.* [2 *Hun*], 226). If, however, the decision upon this application must depend upon the constitutionality of the act of 1876, no great difficulty is seen. The right of the state to care for its children has always, and with very great propriety, been exercised. Under its laws, whenever the welfare of the child has demanded, its courts have frequently interfered for the protection of children of tender years. It has again and again taken from one parent and given them to the other, and has

sometimes refused so to do, the good and welfare of the child being the object always in view. It has so acted without the intervention of a jury, and that power has never been supposed to have been improperly exercised, because a jury was not allowed, and due process of law not had. If the courts of the state may, by virtue of their general powers, interfere for the protection and care of children, it is not seen why the legislature may not prescribe the cases in which children shall be recovered from their custodians, and a mode provided for their summary disposition. For example, if children should be placed to learn the business of stealing, could not the legislature provide a summary remedy for the evil? Has the law no power to rescue summarily female children held for purposes of prostitution, or interfere in an expeditious manner in very many cases, when children of tender years are exposed to peril or temptation? This will hardly be argued, or if claimed, authority most abundant can be found to justify it. Precisely this ground the act of 1876 covers. In my judgment it is a most wise, salutary and beneficent statute, born of Christian civilization, and founded upon the teachings of Him, to whom children were objects of tender love and care. It needs no evidence to demonstrate to our judgment that the life to which these children were subjected and from which they were rescued was perilous to all their best interests. It was a dangerous one to them, physically and morally. The contortions, evolutions and performance of the acrobat are, clearly, physically dangerous, and the surroundings, accompaniments and companions of the circus ring are equally so morally. The recorder of the city of Poughkeepsie was clearly right, and his action must be upheld.

The writs of *habeas corpus* are discharged and the children remanded to the care of the society, which has thus far properly discharged its duties.